## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**
*ex rel*. **ABC,**

**and**                                                      **Case No.:**

**STATE OF MICHIGAN,**
*ex rel*. **ABC,**

      **Plaintiffs,**

**V.**

**DEF,**                                                      <u>**Jury Trial Demanded**</u>
                                                             <u>**Filed Under Seal**</u>
                                                             31 U.S.C. § 3730(b)(2)
      **Defendants.**

## COMPLAINT
**Claims Pursuant to the False Claims Act, 31 USC § 3729, *et seq*.**
**And Michigan Medicaid False Claims Act, M.C.L.A. 400.601, *et seq*.**

## [FILED UNDER SEAL]

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**
*ex rel.* **JANE DOE,**

**and**                                                    **Case No.:**

**STATE OF MICHIGAN,**
*ex rel.* **JANE DOE,**

     **Plaintiffs,**
**V.**

**MED EXPRESS INC.,**                                      **Jury Trial Demanded**
**YASSER MAISARI, and**
**STEPHEN M. SWETECH, MD.,**
**JOHN DOES 1-10,**
                                                           **Filed Under Seal**
                                                           31 U.S.C. § 3730(b)(2)
     **Defendant.**

---

### COMPLAINT
**Claims Pursuant to the False Claims Act, 31 USC § 3729, *et seq*.**
**and Michigan Medicaid False Claims Act, M.C.L.A. 400.601, *et seq*.**

---

The United States of America and the State of Michigan, by and through *qui tam*

originating relator Jane Doe ("Relator" or "Doe"), hereby brings this action pursuant to the False

Claims Act ("FCA"), as amended, 31 U.S.C. § 3729, *et seq*. and the Michigan Medicaid False

Claims Act ("MMFCA"), M.C.L.A. § 400.601, *et seq.*, by and through her attorneys, Brian H.

Mahany and the Law Firm of Mahany Law, and hereby declares the following to recover all

damages, penalties, and other remedies available as established by the FCA and the MMFCA

which were caused by Defendants' repeated and deliberate submissions of false, fraudulent and

intentionally deceptive records, claims, statements and representations, used and caused to be

2

made, used and relied upon by the United States Government and the State of Michigan under and through their Medicaid, Medicare, and other government funded health care programs.

As will be set forth with greater specificity below, Defendants knowingly submitted false claims to the federal government and the State of Michigan through their Medicaid and Medicare programs for reimbursements stemming from medically unnecessary prescriptions written by Defendant Dr. Swetech and which prescriptions were filled by Defendant Med Express Inc. The defendants then submitted claims for reimbursement to government health programs for the medical services provided and the prescriptions that were filled. The Defendants further participated in a kickback scheme such that government reimbursements were then shared with each other. Because the claims for payment were fabricated or were falsified, or were the subject of kickbacks, these claims were ineligible for payment.

## THE PARTIES

1. Plaintiffs are the United States of America and the State of Michigan.

2. Plaintiff-Relator Doe witnessed the fraud alleged in this Complaint and is the original source of this information.

3. Defendant Med Express Inc. is a Michigan for profit corporation. Its registered agent is Defendant Yasser Maisari, who is located at 43614 Garfield Road, Clinton Township, Michigan 48038. Med Express Inc. operates as Heartland Drugs and/or Med Express Pharmacy. It is a pharmacy located in Clinton Township. Med Express Inc. will be referred to herein as Heartland Drugs. Heartland Drugs had a location in Westland, Michigan prior to moving to Clinton Township.

4. Defendant Yasser Alkhader Maisari ("Maisari") is a Michigan licensed pharmacist and is the owner of Heartland Drugs.

5. Defendant Stephen M. Swetech is a Michigan licensed osteopathic physician. Dr. Swetech runs a medical office in Clinton Township. Dr. Swetech's medical office is located directly next to Heartland Drugs. Dr. Swetech is also licensed by the State of Michigan as a drug treatment program prescriber.

6. Defendant John Does 1-10 are unknown entities at this time. Upon information and belief, they are individuals and entities that are involved in the same fraudulent and kickback schemes described herein.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Plaintiff-Relator establishes subject matter jurisdiction under 31 U.S.C. § 3730(b).

8. This Court has personal jurisdiction over the Defendants and is a proper venue pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a). Moreover, Defendants transact business is in this District and have committed the fraudulent acts described below in this District.

## FEDERAL AND STATE FALSE CLAIMS ACT

9. Pursuant to 31 U.S.C.A. § 3729, "any person who--(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . is liable to the United States Government." 31 U.S.C.A. § 3729.

10. Private citizens, such as Doe, can bring actions on the government's behalf. "(1) A person may bring a civil action for a violation of section 3729 for the person and for

the United States Government. The action shall be brought in the name of the Government." 31 U.S.C.A. § 3730(b)(1).

11. Under 31 U.S.C.A. § 3730 (e), there has been no statutory relevant public disclosure of the allegation or transactions in this Complaint with respect to which Plaintiff-Relator is not an "original source," and all material information relevant to this Complaint was provided to the United States Government prior to filing her Complaint pursuant to 31 U.S.C.A. § 3730(e)(4)(B).

12. Michigan has enacted its own false claims act, which is known as the Michigan Medicaid False Claims Act ("MMFCA"). *See* M.C.L.A. § 400.601, *et seq.* The MMFCA states that a "person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for benefits."

13. The MMFCA imposes liability upon a person who "receives a benefit that the person is not entitled to receive by reason of fraud or making a fraudulent statement or knowingly concealing a material fact, or who engages in any conduct prohibited by this statute, shall forfeit and pay to the state the full amount received, and for each claim a civil penalty of not less than $5,000.00 or more than $10,000.00 plus triple the amount of damages suffered by the state as a result of the conduct by the person." MCLA § 400.612.

14. The MMFCA prohibits a person from soliciting, offering, or receiving a kickback or bribe in connection with the furnishing of goods or services for which payment may be made by government health programs. See MCLA § 400.604.

15. The MMFCA provides that a "person shall not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment

or allowance of a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws." MCLA § 400.606.

16. Similar to the FCA, the MMFCA provides that a "person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false. . . (3) A person shall not knowingly make, use, or cause to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state pertaining to a claim presented under the social welfare act." MLCA § 400.607.

17. Like the federal False Claims Act, individual citizens can bring a claim on behalf of the State of Michigan for violations of the Michigan Medicaid False Claims Act. MCLA § 400.610a.

18. As will be described below, Defendants submitted false and/or fraudulent claims for payment to both the Medicare and the Medicaid programs, as well as to other government funded healthcare programs. Both the State of Michigan and United States paid Defendants as a result of these claims that they would not have paid had they known of the false and/or fraudulent representations and certifications in the claims.

## ANTI-KICKBACK STATUTE

19. The federal Anti-Kickback Statute ("AKS") is codified at 42 USC § 1320a-7b(b). The anti-kickback statute makes it a criminal offense to knowingly and willfully offer, pay, solicit, or receive any remuneration to induce or reward referrals or purchases of items

or services reimbursable by a Federal health care program. 42 U.S.C § 1320a-7b(b). Medicare and Medicaid are federal health care programs.

20. Where remuneration is paid purposefully to induce or reward referrals of items or services payable by a Federal health care program, the AKS is violated. By its terms, the AKS ascribes criminal liability to parties on both sides of an impermissible "kickback" transaction. For purposes of the anti-kickback statute, "remuneration" includes the transfer of anything of value, directly or indirectly, overtly or covertly, in cash or in kind.

21. A claim that includes items or services resulting from a violation of the AKS constitutes a false or fraudulent claim for purposes of the False Claims Act. 42 U.S.C. § 1320a-7b(g).

## MEDICAID AND MEDICARE

22. The Medicare program was enacted in 1965 and the Secretary of Health and Human Services regulates the administration of the program through the Centers for Medicare and Medicaid Services ("CMS"). *See* 42 C.F.R. § 422.503(a).

23. Federal law makes it a crime to submit false billings to the government for payment and requires that all submissions for payment be accurate. 18 U.S.C.A. § 1347.

24. Medicare is comprised of four parts: Parts A, B, C, and D.

25. Medicare and Medicaid are both considered "Federal health care programs." 42 U.S.C.A. § 1320a-7b.

26. The Medicaid program was enacted in 1965 and is jointly administered and financed by the federal and state governments. The State of Michigan's Medicaid program is operated by the Michigan Department of Health and Human Services ("MDHHS").

MDHHS has implemented an extensive Provider Manual that governs all Medicaid providers in Michigan, including pharmacies such as El-Khalil.

27. Pursuant to the Michigan Medicaid Provider Manual, Section 12.8,

> Providers certify by signature that a claim is true, accurate, and contains no false or erroneous information. The provider's signature or that of the provider's authorized representative may be handwritten, typed, or rubber-stamped on a paper claim.

> When a provider's warrant is endorsed or deposited, it is certification that the services billed were actually provided. It further certifies that the claims (paper or electronic) paid by the warrant accurately document that the health care services provided were within the limitation of Medicaid (or compliance with a contract). The warrant's certification applies to original claims as well as resubmitted claims and claim adjustments.

Michigan Medicaid Provider Manual, *General Information for Providers*, Section 12.8, Claim Certification, available at http://www.mdch.state.mi.us/dchmedicaid/manuals/MedicaidProviderManual.pdf

28. Medicare and Medicaid only reimburse claims for services that are reasonable and medically necessary. Providers certify that all of their claims are truthful and accurate and were medically necessary.

29. Claims submissions that are the result of kickbacks are ineligible for payment. According to the Michigan Medicaid Provider Manual, a kickback is a type of Medicaid fraud. The Manual provides

> Receiving Kickbacks: An ancillary provider (e.g., physical therapist, laboratory, pharmacy) may agree to pay a physician, nursing facility, or hospital administrator or owner a portion of his Medicaid reimbursement for services rendered to the physician's patient or a beneficiary residing in the facility. Payments to a physician or facility administrator or owner may be a cash payment, a vacation trip, a leased vehicle, inflated rental for space, etc. Often a kickback arrangement results in unnecessary tests or services being provided to the beneficiary in order to generate additional reimbursement.

Michigan Medicaid Provider Manual, *General Information for Providers*, Section 16.2, State Law, available at http://www.mdch.state.mi.us/dchmedicaid/manuals/MedicaidProviderManual.pdf

30. To be a Michigan Medicaid participating provider, all providers, including pharmacies, must comply with all applicable state and federal laws, rules, regulations, and policies. *See* Michigan Medicaid Provider Manual, *Pharmacy*, July 1, 2017, Section 3, Pharmacy Requirements, available at http://www.mdch.state.mi.us/dch-medicaid/manuals/MedicaidProviderManual.pdf.

31. As described below, Defendants fraudulently billed Medicare and Medicaid for services that were not medically necessary and that which were the result of improper kickbacks. Because of these claims, Defendants have been reimbursed money they should not have received.

### FACTUAL BACKGROUND

32. Each of the defendants have participated in a kickback scheme whereby fraudulent medical claims are submitted to government insurance programs and specifically, to Medicaid.

33. The scheme is such that Dr. Swetech prescribes medically unnecessary medications to a host of patients. These medically unnecessary prescriptions are then filed by Heartland Drugs and Maisari. Reimbursement claims are submitted by both Dr. Swetech and Heartland Drugs to Medicare and Medicaid for these medically unnecessary prescriptions and upon information and belief, for medically unnecessary services and office visits provided by Dr. Swetech to his patients.

34. Defendants share the proceeds from the fraudulently obtained government payments with one another. Any sharing of government monies amounts to a kickback.

35. Dr. Swetech's medical office is located directly next to Heartland Drugs.

36. Dr. Swetech routinely prescribes his patients, on average, 10-15 medications each. Upon information and belief, Dr. Swetech's patients did not have a medical need for many of the medications that Dr. Swetech prescribed them.

37. Dr. Swetech wrote prescriptions for patients who were not presently in his office and wrote prescriptions for patients who did not need the medications.

38. Dr. Swetech prescribes the medications so that Heartland Drugs can fill the prescriptions and submit reimbursement claims to Medicare and Medicaid.

39. Upon information and belief, the moneys received by both Dr. Swetech and Heartland Drugs from government insurance programs are shared between all Defendants.

40. Upon information and belief, Dr. Swetech's patients largely receive the same prescriptions as all other patients, regardless of any actual medical necessity for the medications.

41. Upon information and belief, Dr. Swetech and Maisari correspond with one another to discuss which medications allow for the largest profit margins. Dr. Swetech wrote prescriptions based upon the profits that both he and Heartland Drugs could receive from the government.

42. Many of the medications that Dr. Swetech prescribed are controlled substances. Upon information and belief, patients are instructed that certain prescriptions, specifically controlled substances, are only to be filled at Heartland Drugs.

43. Heartland Drugs is located directly next to Dr. Swetech's office, which makes filling prescriptions convenient for patients.

44. Heartland Drugs will not fill Dr. Swetech's patients' controlled substance prescriptions unless the patients agree to have Heartland Drugs fill all of the prescriptions prescribed to them by Dr. Swetech.

45. Upon information and belief, Heartland Drugs, and/or its agents, employees, etc., have went to Dr. Swetech's medical office and asked for specific prescriptions to be written. These prescriptions were written for patients that were not present at the time.

46. Heartland Drugs directly obtained prescriptions for Heartland Drugs' customers directly from Dr. Swetech, which prescriptions included opioids, suboxone, and vivitrol injections. This was done solely to increase government insurance reimbursement.

47. In addition to filling medically unnecessary prescriptions that were ordered by Dr. Swetech, Heartland Drugs also filled prescriptions for other customers that it knew were medically unnecessary and for which Heartland Drugs received improper government reimbursement or kickback payments.

48. Upon information and belief, Heartland Drugs and Maisari also were participants in other kickback schemes with other prescribers such that Heartland Drugs, Maisari, and other prescribers shared in the proceeds of filling medically unnecessary prescriptions.

## FIRST CLAIM FOR RELIEF

### Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A) and (B)

49. Doe incorporates by reference each of the preceding paragraphs of this Complaint.

50. This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq.*, as amended.

51. By virtue of the acts described above, the Defendants knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval, which resulted in countless millions of dollars of payments of false claims by the United States Government and State of Michigan to the Defendants. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(A).

52. By virtue of the acts described above, the Defendants knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim which resulted in millions of dollars of payments of false claims by the United States Government and the State of Michigan to the Defendants. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(B).

53. The acts described above induced the United States Government and/or the State of Michigan to pay or approve such false or fraudulent claims.

54. Every such payment by the United States and State of Michigan to the Defendants was a product of a false claim and materially false statements made by Defendants.

55. In reliance on these false representations and claims, the United States Government and the State of Michigan, by and through its intermediaries, agents, and agencies, paid countless millions of dollars for claims submitted by Defendants that it otherwise would not have paid had the government been aware of Defendants' knowing violations of the FCA and MMFCA and the various rules and regulations of the Medicare, Medicaid, and other government funded medical programs.

56. Because of Defendant's acts, the United States and the State of Michigan have been damaged and continue to be damaged in substantial amounts to be determined at trial.

57. Pursuant to the FCA, the Defendants are liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015.

### SECOND CLAIM FOR RELIEF

**Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(C)**

58. Doe incorporates by reference each of the preceding paragraphs of this Complaint.

59. This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq.*, as amended.

60. By virtue of the acts described above, the Defendants conspired to knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval, which resulted in payments of false claims by the United States Government and State of Michigan to the Defendants. Such conspiracy is a violation of 31 U.S.C. § 3729(a)(1)(C).

61. By virtue of the acts described above, the Defendants also conspired to knowingly make, use or cause to be made or used, false records and statements material to a false or fraudulent claim which resulted in payments of false claims by the United States Government and the State of Michigan to the Defendants. Such conspiracy is a violation of 31 U.S.C. § 3729(a)(1)(C).

62. Because of Defendants' acts, the United States and the State of Michigan have been damaged and continue to be damaged in substantial amounts to be determined at trial.

63. Pursuant to the FCA, the Defendants are liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015.

### THIRD CLAIM FOR RELIEF

**Violations of the Michigan Medicaid False Claims Act – MCLA § 400.601, *et seq*.**

64. Doe incorporates by reference each of the preceding paragraphs of this Complaint.

65. This is a claim for treble damages and penalties under the MCLA § 400.601, *et seq*.

66. By virtue of the acts described above, the Defendants knowingly presented, or caused to be presented, to an employee or officer of the State of Michigan or its agencies under the social welfare act, a false or fraudulent claim for payment or approval, which resulted in countless millions of dollars of payments of false claims by the State of Michigan and the United States Government to the Defendants. All such false claims and acts are in violation of the MMFCA in general and specifically in violation of MCLA §§ 400.606; 400.607.

67. By virtue of the acts described above, the Defendants also knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim which resulted in millions of dollars of payments of false claims by the State of Michigan and the United States Government to the Defendants. All such false claims

and acts are in violation of the MMFCA in general and specifically in violation of MCLA §§ 400.606; 400.607; 400.612.

68. The acts described above induced the State of Michigan and the United States Government to pay or approve such false or fraudulent claims.

69. Every such payment by the State of Michigan and the United States Government to the Defendants was a product of a false claim and materially false statements made by Defendants.

70. In reliance on these false representations and claims, the State of Michigan and the United States Government, by and through its intermediaries, agents, and agencies, paid countless millions of dollars for claims submitted by Defendants that it otherwise would not have paid had the government been aware of Defendants' knowing violations of the MMFCA and the various rules and regulations of the Medicare, Medicaid, and other government funded medical programs.

71. By reason of Defendants' acts, the State of Michigan and the United States Government has been damaged and continues to be damaged in substantial amounts to be determined at trial.

72. Pursuant to the MMFCA, the Defendants are liable to the State of Michigan for treble damages and a civil penalty of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims herein.

## FOURTH CLAIM FOR RELIEF

### Violations of The Michigan Social Welfare Act – MCLA § 400.111b

73. Doe incorporates by reference each of the preceding paragraphs of this Complaint.

74. By virtue of the acts described above, the Defendants received monies that they were not entitled to receive.

75. As a condition of participation in the Michigan Medicaid program, the Defendants were required to "promptly shall notify the director of a payment received by the provider to which the provider is not entitled or that exceeds the amount to which the provider is entitled. If the provider makes or should have made notification under this subsection or receives notification of overpayment under section 111a(17), the provider shall repay, return, restore, or reimburse, either directly or through adjustment of payments, the overpayment in the manner required by the director. Failure to repay, return, restore, or reimburse the overpayment or a consistent pattern of failure to notify the director shall constitute a conversion of the money by the provider." MCLA § 400.111b.(16).

76. As a condition of payment for services rendered, a "provider must certify that a claim for payment is true, accurate, prepared with knowledge and consent of the provider, and does not contain untrue, misleading, or deceptive information. A provider is responsible for the supervision of an agent, officer, or employee who prepares or submits the claims. A provider's certification is prima facie evidence that the provider knows that the claim is true, accurate, prepared with his or her knowledge and consent, does not contain misleading or deceptive information, and is filed in compliance with applicable policies, procedures and instructions." MCLA § 400.111b.(17).

77. By virtue of Defendants' retention of falsely obtained monies and false certifications for payment, Defendants did not meet the requirements to participate in the Michigan Medicaid program.

78. These actions and failures would have prohibited Defendants from receiving any Medicaid payments and would have prohibited Defendants from being able to participate in the Medicaid program.

79. Defendants should be required to return all Medicaid payments they received after they wrongfully retained monies that were paid to them, in violation of MCLA § 400.111b.(16) and 400.111e.

## FIFTH CLAIM FOR RELIF

### Violations of 42 U.S.C. § 1320a-7k

80. Relator incorporates by reference each of the preceding paragraphs of this Complaint.

81. 42 U.S.C. 1320a-7k is known as the Medicare and Medicaid program integrity provisions in the Social Security Act. The statute requires a person who has received an overpayment to report and return the overpayment to the Secretary, the state, an intermediary, a carrier, or a contractor, as appropriate, at the correct address, and to notify the Secretary, state, intermediary, carrier or contractor to whom the overpayment was returned in writing of the reason for the overpayment. It requires that an overpayment be reported and "returned by the later of— (A) the date which is 60 days after the date on which the overpayment was identified; or (B) the date any corresponding cost report is due, if applicable." 42 U.S.C. § 1320a-7k(d)(2). Section 1128J(d)(3) of the Act specifies that "any overpayment retained by a person after the deadline for reporting and returning an overpayment is an obligation (as defined in 31 U.S.C. 3729(b)(3)) . . . for purposes of 31 U.S.C. 3729." 42 U.S.C. § 1320a-7k(d)(3).

82. Pursuant to 42 U.S.C. § 1320a-7k(4)(B) "the term "overpayment" means any funds that a person receives or retains under subchapter XVIII or XIX to which the person, after

applicable reconciliation, is not entitled under such subchapter." The Defendants have received funds pursuant to subchapters XVIII and XIX.

83. The Defendants knowingly submitted false and fraudulent claims that allowed him to receive greater reimbursement than he was entitled to. The excess reimbursement amounts are therefore "overpayments" that must have been returned. Pursuant to 42 U.S.C. 1320a-7k, the Defendants' retention of these funds constitutes overpayments that he was required to reimburse.

84. Defendants each constitutes a "person" under 42 U.S.C. § 1320a-7k(d)(4)(C).

85. Defendants have not reimbursed the United States the funds that they were overpaid with.

86. Defendants' actions therefore create a liability under the False Claims Act. Pursuant to the FCA, the Defendants are liable to the United States for a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted prior to November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted on or after November 2, 2015, plus three (3) times the amount of damages which the United States has sustained because of Defendants' actions.

## SIXTH CLAIM FOR RELIEF

### Violations of the Anti-Kickback - 42 U.S.C.A. § 1320a-7b

87. Plaintiff-Relator incorporates by reference each of the preceding paragraphs of this Complaint.

88. The Defendants violated the Anti-Kickback Statute by sharing patients with one another for a financial gain as well as sharing Medicare reimbursements with one

another, which actions encouraged additional patient referrals between the Defendants.

89. The sharing of Medicare reimbursement constitutes remuneration under the AKS.

90. A violation of the Anti-Kickback Statute creates civil liability, including liability under the False Claims Act.

91. The Defendants are therefore liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted prior to November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted on or after November 2, 2015.

## SEVENTH CLAIM FOR RELIEF

### Fraud

92. Relator realleges and incorporates by reference the allegations made in this Complaint.

93. Through the acts described above, Defendants made misrepresentations and omissions of material fact concerning medical services he allegedly provided to patients.

94. Defendants made these misrepresentations and omissions of material fact with knowledge of their falsity and/or with reckless disregard for their truth.

95. Defendants made these misrepresentations and omissions of material fact intending that United States and the State of Michigan, directly or indirectly, would rely on their accuracy in beginning or continuing to do business with Defendants.

96. Both the United States and the State of Michigan justifiably relied on these misrepresentations and omissions of material fact to their detriment.

97. As a result of Defendants' wrongful conduct, the United States and the State of Michigan have suffered damages in an amount to be determined at trial.

98. In addition to compensatory damages, given Defendants' bad faith and/or malicious, willful, reckless, wanton, or fraudulent conduct, both the United States and the State of Michigan are entitled to recover punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, the United States of America and the State of Michigan, through Relator Jane Doe, request the Court for entry of judgment against Defendants and the following relief:

A. That Defendants cease and desist from further violations of the False Claims Act, the MMFCA, and Medicare, Medicaid and other federally and state funded medical programs' rules and regulations;

B. That the Court enter judgment against the Defendants in an amount equal to three times the amount of damages suffered by the United States and State of Michigan because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015 or a civil penalty of not less than $5,000 and not more than $10,000 for each false or fraudulent claim or certification in violation of the MMFCA;

C. That Relator be awarded the maximum amount allowed pursuant to section 3730(d) of the False Claims Act and MCLA § 400.610a;

D. That Relator be awarded all costs of this action, including attorneys' fees, costs and expenses pursuant to 31 U.S.C. § 3730(d) and MCLA § 400.610c; and

E. That the United States, the State of Michigan, and Relator be granted such further relief as the court deems equitable, just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, a jury trial is demanded.

Respectfully submitted on this 26th day of September, 2017.

By:

_____/s/ Brian H. Mahany

Brian H. Mahany
Mahany Law
Wisconsin Bar: 1065623
8112 West Bluemound Road
Suite 101
Wauwatosa, Wisconsin 53213
Office: (414) 258-2375
Fax: (414) 777-0776
Email: brian@mahanylaw.com
Attorney for Plaintiff-Relator